IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

    Plaintiff,

v.

$8,000.00 IN UNITED STATES CURRENCY,

    Defendant.

_____

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***
_____

The United States of America, by and through United States Attorney John F. Walsh and Assistant United States Attorney Martha A. Paluch, pursuant to Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions G(2), states:

**JURISDICTION AND VENUE**

1. The United States of America (the United States) has commenced this action pursuant to the civil forfeiture provisions of 21 U.S.C. § 881, seeking forfeiture of the defendant $8,000.00 in U.S. Currency involved in the narcotics provisions of 21 U.S.C. §§ 801 et seq. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

2. Venue is proper under 21 U.S.C. § 881(j) and 28 U.S.C. § 1395, as the defendant property is located, and all of the acts described herein occurred, in the District of Colorado.

## DEFENDANT PROPERTY

3.      $8,000.00 in United States Currency, seized on July 5, 2011, from 7310 Krameria Street, Commerce City, Colorado ("defendant Currency"); defendant Currency is currently being held by the United States Marshal in Denver, Colorado.

## FACTUAL BASIS FOR FORFEITURE

4.      Except as otherwise noted, all of the following facts and information have been discovered through the observations and investigations of fellow law enforcement officers as reported to me.

5.      Starting in June of 2011, officers from the West Metro Drug Task Force ("WMDTF") met with a Confidential Informant ("CI") who stated that a person named "Mick" was involved in selling methamphetamine.  The CI told officers that "Mick" had been calling the CI for the past week and asking whether the CI would be interested in purchasing methamphetamine from him.  The CI stated that "Mick" lived in a housing complex on the southwest corner of 44th Place and Newland Street in Wheat Ridge, Colorado in an apartment on the second floor. The CI stated that "Mick" lived in the apartment with a woman named "Carrie."  Through further investigation, officers identified "Mick" as Mickey Adam Vargas ("Vargas") whose address was listed at West 44th Place in Wheat Ridge, Colorado ("West 44th Place").

6.      On or about June 2, 2011, the CI called Vargas to arrange purchasing methamphetamine from him for $100.00.  Vargas agreed and requested an additional $10.00 to pay for fuel.  Officers set up surveillance outside of Vargas's address and observed a white 1994 Chevrolet Cavalier ("Chevrolet") arrive and park in a parking lot

2

in front of West 44th Place.  Officers watched as two women got out of the Chevrolet and walk into the West 44th Place building.  Officers learned that the Chevrolet was registered to Carrie Warner.

7. Prior to meeting with Vargas, the CI was equipped with an electronic listening device and $110.00 in WMDTF pre-recorded funds to purchase the methamphetamine.  After the CI entered Vargas's apartment, surveillance officers heard Vargas make a telephone call and state, "All right dude, I'll be down there in about a half hour."  The CI then gave Vargas the $110.00 and Vargas stated that he would be back in one hour.

8. Surveillance officers watched Vargas leave the West 44th Place building and get into the aforementioned Chevrolet in the parking lot.  The vehicle was followed by surveillance officers who saw the Chevrolet parked in the driveway of a home at 7310 Krameria Street, Commerce City, Colorado ("Krameria Street").  The CI then called Vargas and Vargas stated that he was on the way back and had the methamphetamine with him. Officers saw Vargas return to West 44th Place building in the Chevrolet.  Inside the building, Vargas gave the CI a plastic bag containing methamphetamine. The contents of the bag weighed 2.38 grams and tested positive for Amphetamines.

9. On or about June 3, 2011, officers went to the Krameria Street home and saw a white Dodge Magnum in the driveway.  The Dodge Magnum was registered to Jeremy Michael Asterino at the Krameria Street address.

10. On June 6, 2011, a search warrant for Vargas's phone was obtained.

11. On or about June 7, 2011, the CI arranged another purchase of methamphetamine from Vargas for $200.00. Vargas requested another $10.00 for fuel expenses. Officers equipped the CI with an electronic listening device and $210.00 in WMDTF pre-recorded funds to complete the purchase of the methamphetamine. The CI gave Vargas the pre-recorded funds and surveillance officers watched Vargas leaving the West 44th Place building and get into the Chevrolet and drive to the Krameria Street home. At the home, Officers saw Vargas and another male by the south door. Shortly thereafter, Vargas left the Krameria Street home and was followed directly back to the West 44th Place building. The CI then received a text message from Vargas's telephone asking the CI to come over.

12. The CI was re-equipped with the electronic listening device and returned to the West 44th Place building and was provided methamphetamine from Vargas. The CI gave the officers the bag containing the methamphetamine which tested positive for Amphetamine and weighed 1.90 grams.

13. On or about June 8, 2011, officers received the telephone records for Vargas's cellular telephone. Those records identified a telephone call made on June 2, 2011, at the same time the CI was in Vargas's home and officers heard Vargas on his telephone. Officers obtained a search warrant for that telephone number. The subscriber of that telephone number was identified as Jeremy Michael Asterino whose address was listed as 7310 Krameria Street in Commerce City, Colorado.

14. On or about June 24, 2011, the CI arranged another purchase of methamphetamine from Vargas. The CI was re-equipped with an electronic listening

4

device and $210.00 in pre-recorded funds. The CI gave Vargas the money at his home at West 44th Place and Vargas was followed by surveillance officers to the Krameria Street home. Shortly thereafter, Vargas left the home in the Chevrolet and was stopped by officers for a traffic violation. Vargas was identified and arrested by officers on an outstanding warrant. Officers found two plastic bags in Vargas's pants pocket, one containing 4.80 grams and another containing 2.90 grams of methamphetamine. In addition, officers located a $10.00 bill matching the $10.00 bill provided to the CI for making the methamphetamine purchase.

15. After his arrest, Vargas waived his Miranda Rights and spoke with detectives. He stated that he purchases methamphetamine from "Jeremy" at Jeremy's home in Commerce City, Colorado located near Highway 2 and 74th Avenue, which is the general area of the Krameria Street home. He stated that "Jeremy" drives a Dodge Magnum and he recently purchased ¼ ounce of methamphetamine from Jeremy for $400.00. Vargas stated that the most methamphetamine he has purchased from Jeremy is ½ ounce. He also told officers that he sees Jeremy on a daily basis and usually goes to Jeremy's Krameria Street home to buy his methamphetamine.

16. On or about July 5, 2011, Officers obtained a search warrant for the Krameria Street home. During the search, officers located and seized defendant $8,000.00 in U.S. Currency under the mattress in the master bedroom. Officers also found a safe under the bed in the master bedroom which contained 226 grams of methamphetamine and another bag containing 71 grams of methamphetamine inside a man's shoe in the closet of the master bedroom. On the dresser in the master

5

bedroom closet, officers found a scale, unused plastic packaging bags, 4.6 grams of methamphetamine and pay-owe sheets.  In addition, a loaded handgun was located on the night stand in the master bedroom.  In total, 301 grams of methamphetamine were found in the home, which is approximately .66 pounds.

17. Based in part on the facts contained herein, Jeremy Michael Asterino has been charged by the State of Colorado with three Counts of Distribution of a Schedule II Controlled Substance and one Count of Possession of Schedule II Controlled Substance with Intent to Distribute (Jefferson County Case Number 2011CR1829).

18. The Colorado Department of Labor records show no wage history for 2009 or 2010 for Jeremy Michael Asterino.  Those records also show that for 2011, he had $1,807.00 in income.

19. The facts set forth above are not all of the facts known to the investigation, but are sufficient to establish probable cause to believe that the defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## VERIFICATION OF THOMAS O. HAYES, TASK FORCE OFFICER
## DRUG ENFORCEMENT ADMINISTRATION

I, Task Force Officer Thomas O. Hayes, hereby state and aver that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein is true.

s/ *Thomas O. Hayes*
Thomas O. Hayes, Task Force Officer
Drug Enforcement Administration

STATE OF COLORADO	)
CITY AND	)ss.
COUNTY OF DENVER	)

The foregoing VERIFIED COMPLAINT FOR FORFEITURE *IN REM* was subscribed before me this 17th day of January, 2012, by Thomas O. Hayes, Drug Enforcement Administration Task Force Officer.

s/ *Nicole C. Davidson*
Notary Public, State of Colorado

My Commission Expires 6/15/2014

## CLAIM FOR RELIEF

20.   The Plaintiff repeats and incorporates by reference each of the paragraphs above.

21.   By the foregoing and other acts, defendant $8,000.00 in U.S. Currency constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance in violation of 21 U.S.C. § 801, et seq., defendant $8,000.00 in U.S. Currency constitutes proceeds traceable to an exchange of controlled substances in violation of 21 U.S.C. § 801, et seq., and defendant $8,000.00 in U.S. Currency constitutes money used or intended to be used to facilitate a violation of 21 U.S.C. § 801, et seq.  Therefore, defendant $8,000.00 in U.S. Currency is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the defendant $8,000 in U.S. Currency in favor of the United States, that the United States be authorized to dispose of the property in accordance with law, and that the

Court enter a finding of probable cause for the seizure of the defendant property and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

DATED this 17th day of January, 2012.

Respectfully submitted,

JOHN F. WALSH
United States Attorney

By: s/ *Martha A. Paluch*
Martha A. Paluch
Assistant United States Attorney
1225 17th Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0100
E-mail: Martha.Paluch@usdoj.gov
*Attorney for Plaintiff*